**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

| | | |
|---|---|---|
| PAMELA MACHINO, | * | |
| Plaintiff, | * | |
| v. | * | CV 126-014 |
| THE HARTFORD INSURANCE GROUP, INC., et al., | * | |
| Defendants. | * | |

**O R D E R**

Before the Court is Defendant The Hartford Insurance Group, Inc.'s ("Defendant") motion to dismiss. (Doc. 13.) For the following reasons, Defendant's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff, now proceeding *pro se*, brings claims for breach of contract and bad faith under O.C.G.A. § 33-4-6. (Doc. 1-1, at 3-5.) On or about September 26, 2024, Plaintiff's property, located at 820 Academy Avenue Waynesboro, Georgia 30830, (the "Property") was damaged by Hurricane Helene. (Id. at 2; Doc. 1-3, at 2.) At the time of the storm, the Property was insured by Defendant. (Doc. 1-1, at 2.) After the storm, Plaintiff made claims for damages to the Property and her personal belongings under her insurance policy, Policy Number 55200232380, (the "Policy").

(Id.; Doc. 13-2, at 5.) On May 2, 2025, a damage consultant visited the Property, assessed the damages, compiled photo evidence, and estimated the replacement cost value at $189,153.80. (Doc. 1-3, at 6, 11-123.) On May 5, 2025, Plaintiff's then-attorney sent a demand letter to Defendant for $189,153.80 and demanded any request for reinspection prior to issuing payment be made within fourteen days. (Id. at 2-3.)

Plaintiff alleges "Defendant has not paid Plaintiff's [c]laims as presented or otherwise compensated" her according to the Policy. (Doc. 1-1, at 3.) She alleges Defendant is in breach for not paying her claims because she paid all premiums, timely notified Defendant of the loss, cooperated with Defendant's investigation of damages, and complied with her duties under the Policy. (Id.) Plaintiff also alleges Defendant acted in bad faith by intentionally or recklessly refusing to pay her claims. (Id. at 4.) Finally, Plaintiff seeks "compensatory damages, economic losses, mental anguish, contract damages, punitive damages, and any remedies available in equity." (Id. at 5.)

On September 24, 2025, Plaintiff filed this case in the Superior Court of Burke County, Georgia. (Id. at 1.) On January 16, 2026, Defendant removed. (Doc. 1.) On February 6, 2026, Defendant filed a motion to dismiss. (Doc. 13.) Plaintiff responded, Defendant replied, and Plaintiff filed a sur-reply.

(Docs. 26, 27, 28.) Defendant's motion is now ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-

pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

Defendant argues Plaintiff fails to state claims for breach of contract and bad faith under O.C.G.A. § 33-4-6. (Doc. 13-1, at 1-2.) Defendant also argues Plaintiff cannot recover for emotional distress or punitive damages. (Id.)

### A. Breach of Contract

"To state a claim for breach of contract under Georgia law, [a plaintiff] ha[s] to plausibly allege that [a defendant] owed her a contractual obligation, then breached it, causing her damages." Tims v. LGE Cmty. Credit Union, 935 F.3d 1228, 1237 (11th Cir. 2019) (citation omitted); see also Old Mo. Bank v. Vinyard, No. 1:22-CV-2685, 2023 WL 4422845, at *2 (N.D. Ga. July 10, 2023) (citation omitted) ("In Georgia, the elements of breach of contract are 'the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'"). A valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties

to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.

Defendant argues Plaintiff fails to state a claim for breach of contract because her allegations are insufficient to show a breach occurred. (Doc. 13-1, at 9.) Defendant argues that "[r]egardless of whether [Plaintiff's] characterization of the Policy is true, her allegations fail to show the coverages allegedly at issue, the applicable policy language, or any of the Policy's terms and conditions she asserts [Defendant] breached." (Id. at 10.) Next, Defendant argues that Plaintiff failed to sufficiently allege her damages beyond stating Defendant "fail[ed] to pay all benefits due under the [Policy]." (Id. at 11.) Defendant asserts Plaintiff does not meet the pleading standard for breach of contract without alleging "which benefits she is pursuing in this lawsuit or how much she now seeks for those benefits." (Id.) Finally, Defendant argues Plaintiff cannot bring any claims against it because Nutmeg Insurance Company was the issuing insurer, and thus, the proper defendant. (Id. at 16.) Defendant attaches Plaintiff's Policy, which states Nutmeg Insurance Company issued the Policy and lists The Hartford, which is the holding company. (Doc. 13-2, at 2, 5.)

Plaintiff did not specifically respond to Defendant's arguments but "ask[s] that the Court allow [her] to have litigation to have [her] house repaired, and compensation for [her] medical

bills, repairs, and loses." (Doc. 26, at 4.) Plaintiff also attaches various images of items and furniture inside and outside her house that were damaged by rain, mildew, and mold. (Id. at 7-12.) Further, Plaintiff attaches a letter from a claims representative stating that the Policy has a $10,000.00 deductible, so after calculating the losses, applying the deductible, and subtracting the depreciation based on the actual cash value of the damaged items, Plaintiff was entitled to $1,292.78, which was paid to her on October 10, 2024. (Id. at 17.) She states she incurred damages to the fences, storage building door, front and back door screens, concrete sidewalk, and water system. (Id. at 19.) As a result of the damages, she fell on the sidewalk and broke her nose, had a high water bill due to the broken water system, and lost her church and holiday décor and tools that were on the front and back porches. (Id.) Plaintiff also includes a notice of nonrenewal of insurance due to her failure to comply with a home inspection to evaluate eligibility, which was mailed to her from Nutmeg Insurance Company on January 10, 2025. (Id. at 20.)

Defendant argues Plaintiff failed to address its arguments to dismiss and instead "asserts a litany of supposed bad faith actions well outside the scope of the complaint's allegations." (Doc. 27, at 1.) Defendant argues Plaintiff again fails "to demonstrate how her complaint identifies which of the Policy's terms [Defendant]

allegedly breached, her alleged damages from the [s]torm, or how [Defendant] is in privity of contract with her." (Id. at 3.) Defendant argues that Plaintiff's assertions in her response concern facts not alleged in the complaint, "including that she received $1,292.78 for the damage to the Property," "a claim for a subsequent storm, her desire to seek recovery for her subsequent personal injuries and medical bills, the conduct of a contractor, and the nonrenewal of the Policy months after the Storm." (Id. at 5.) Accordingly, Defendant argues the Court cannot consider these assertions as part of this motion. (Id. at 6.) Moreover, Defendant argues that Plaintiff's requests for recovery for damages to her automobile and medical bills following the incident must be denied because such damages are not covered under the Policy. (Id. at 9.)

Plaintiff replies that Defendant is the proper party because she communicated with Defendant initially regarding her claim and Nutmeg Insurance Company is an affiliate of Defendant. (Doc. 28, at 1.) Additionally, Plaintiff argues her insurance contract states she signed with Defendant. (Id. at 1-2.) As for Plaintiff's assertion of a subsequent storm, she argues it is all the same claim because the hole in the roof resulted from Hurricane Helene, and then rain leaked through that hole during a second storm and broke the ceiling. (Id. at 3.)

The Court finds Plaintiff fails to state a claim for breach of contract. Plaintiff alleges breach of contract against Defendant for "failing to pay all benefits under the Policy." (Doc. 1-1, at 3.) Plaintiff alleges she is entitled to coverage and benefits for property damage because the Policy is an enforceable contract between her and Defendant; she paid the premiums and complied with all conditions of the Policy; she gave Defendant timely notice of the loss and cooperated with its investigation of the damage; and as a result of Defendant's breach, she suffered damages. (Id.)

Nonetheless, the Court finds Plaintiff fails to provide information regarding the Policy's coverage and the specific sections Defendant breached. Further, Plaintiff fails to sufficiently allege her damages or the specific amount she seeks under the Policy. Plaintiff attached a "Global Damage Report and Estimate" that assessed her damages, provided photo evidence, and concluded that the replacement cost value was $189,153.80. (Doc. 1-3, at 11-123.) However, she fails to outline the damages or repairs she claims Defendant failed to pay under the Policy. Although Plaintiff seems to allege that she is owed more than the $1,292.78 paid out after her deductible, she fails to allege how Defendant is liable for any specific damages. While Plaintiff "ask[s] that the Court allow [her] to have litigation to have [her] house repaired," she fails to address the elements of a breach of

contract claim, and her conclusory allegations fail to meet the pleading standards. (Doc. 26, at 4); Twombly, 550 U.S. at 555. Because Plaintiff fails to state a claim for breach of contract, the Court need not address Defendant's arguments as to whether it is the proper defendant under the Policy. Therefore, Plaintiff's claim for breach of contract is **DISMISSED**.

**B. Bad Faith**

Next, Defendant argues Plaintiff fails to state a claim for bad faith under O.C.G.A. § 33-4-6. (Doc. 13-1, at 1-2.)

> To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith.

BayRock Mortg. Corp. v. Chicago Title Ins., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) (citation omitted). Thus, to prevail on a bad faith claim, a demand must be made more than 60 days before filing suit and include language "sufficient to alert the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." Id. (quoting Arrow Exterminators, Inc. v. Zurich Am. Ins., 136 F. Supp. 2d 1340, 1356 (N.D. Ga. 2001)). While no specific language is necessary to satisfy this requirement, the demand must be sufficient to put the insurer on notice that "a bad faith claim will be asserted if the specific loss noted is not paid." Arrow Exterminators, 136 F.

Supp. 2d at 1356; see First Solar Elec., LLC v. Zurich Am. Ins., No. 521-CV-408, 2022 WL 731518, *4 (M.D. Ga. Mar. 10, 2022) (holding that a demand "need not contain specific or formulaic language" so long as it puts the insurer on notice of plans to take legal action). Because O.C.G.A. § 33-4-6 imposes a penalty on insurers, its requirements must be strictly construed. BayRock, 648 S.E.2d at 435 (citation omitted). As such, "[a] plaintiff's failure to properly satisfy the demand requirement is an absolute bar to recovery of a bad faith penalty and attorneys' fees under the statute." S. Realty Mgmt., Inc. v. Aspen Specialty Ins., No. 108-CV-0572, 2008 WL 4787511, at *2 (N.D. Ga. Oct. 27, 2008).

Defendant argues Plaintiff cannot carry her burden of proof to establish liability under § 33-4-6. (Doc. 13-1, at 12.) First, Defendant argues Plaintiff's demand letter improperly imposed a deadline of fourteen days instead of the sixty-day deadline under § 33-4-6. (Id. at 13.) As a result, Defendant "did not have sixty days to 'make a decision to pay, deny, or further investigate [Plaintiff's] claim.'" (Id. (citation omitted).) Second, Defendant argues Plaintiff's demand was improper because she did not account for the Policy's deductible or the difference between replacement cost value and actual cost value. (Id. at 12.) Also, Defendant argues "the Policy's property coverage conditions require, as a condition precedent to coverage and filing suit, that [Plaintiff] cooperate in any investigation and make the

Property available for inspection," which she did not do. (Id. at 13.) Further, Defendant argues Plaintiff's demand for replacement costs was not due and payable at the time because she failed to provide evidence of completed repairs or accounting to support her payment request. (Id. at 14-16.)

Plaintiff fails to directly address these arguments in her response and sur-reply. (Docs. 26, 28.) Plaintiff states Defendant told her "to take a picture of thousands of items, clothes, furniture, hats, shows, supplies including [her] house structure, furniture that can't be repaired [and] possessions inside and out." (Doc. 26, at 2-3.) Defendant replied that she cannot recover due to her failure to comply with its instructions. (Doc. 27, at 7.) Further, Defendant argues Plaintiff's "admission of the prior payment shows that the dispute here concerns the amount payable for the damage to the Property from the Storm, which cannot support a claim for bad faith." (Id. at 6-7.)

In her sur-reply, Plaintiff attached a summary of personal hurricane events and pictures. (Docs. 28-1, 28-2.) She states Defendant's "lack of following through on this claim and the compan[y's] representatives missed fixing the problem [and] allowed the problem to get worse [and] now will cost a lot more to fix." (Doc. 28, at 3.) Plaintiff also argues she "tried to work with [Defendant] multiple times about [her] situation asking them if they could come out [and] evaluate the situation." (Id. at 4.)

She argues she paid Defendant for insurance and "should have my home fixed [and] possessions accounted for." (Id. at 6.)

Here, Plaintiff claims Defendant relied on ambiguous portions of the Policy as an allegedly lawful basis to avoid payment. (Doc. 1-1, at 4.) Further, Plaintiff alleges Defendant knew it lacked a "legitimate, arguable, or debatable reason for refusing to pay the Plaintiff's [c]laims." (Id.) Additionally, Plaintiff alleges "Defendant intentionally or recklessly failed to properly investigate Plaintiff's [c]laims" without properly gathering all facts necessary to determine coverage or liability. (Id. at 4-5.) Finally, Plaintiff asserts "Defendant breached the duty of good faith and fair dealing implied in and by the [Policy] and did so with malice, willfulness, and wanton and reckless disregard for [her] rights." (Id. at 5.)

The Court finds Plaintiff failed to state a claim for bad faith under O.C.G.A. § 33-4-6. At the outset, the Court notes Plaintiff's demand letter imposed a fourteen-day response deadline to avoid waiver of the insurer's rights, but Plaintiff still waited more than sixty days after sending the demand letter on May 5, 2025 to file suit on September 24, 2025. (Doc. 1-3, at 2); O.C.G.A. § 33-4-6. Moreover, Plaintiff only includes conclusory allegations as to whether Defendant's refusal to pay her demand amounts to bad faith and, again, fails to cite a provision of the Policy that covers her claim. Additionally, Plaintiff does not

allege she complied with Defendant's investigation or disclosed supplemental information to support her request for payment. Thus, Plaintiff's claim for bad faith under O.C.G.A. § 33-4-6 is **DISMISSED.**[1]

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 13) is **GRANTED.** The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 31st day of August, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

[1] Defendant argues Plaintiff's requests for emotional distress and punitive damages should be dismissed because a plaintiff cannot recover such damages under a breach of contract claim. (Doc. 13, at 17-18.) The Court agrees. See Howell v. S. Heritage Ins., 448 S.E.2d 275, 276 (Ga. Ct. App. 1994) ("[T]he penalties contained in [O.C.G.A.] § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." (citation omitted)).